IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DEIDRE SCOTT, | |
| Plaintiff, | |
| | CIVIL ACTION FILE |
| v. | |
| | No. 1:19-cv-_____ |
| WELL STATES HEALTHCARE, LLC and NATE ORMOND, | |
| Defendants. | |

## COMPLAINT

This lawsuit arises from Defendant Well States Healthcare, LLC's ("WSHC") unlawful race-based discrimination and retaliation against its former employee, Plaintiff Deidre Scott. In support of her claims, Plaintiff shows as follows:

### *Parties, Jurisdiction, and Venue*

1.

Plaintiff Scott is an African-American female and citizen of the State of Georgia who was employed by Defendant WSHC from October 2017 through July 20, 2018.

2.

Defendant WSHC is a Utah limited liability company (entity number 9327803-0160) with its principal office in Draper, Utah. At the time this lawsuit is filed, WSHC transacts and has been transacting business within the State of Georgia and is subject to personal jurisdiction in this judicial district and division, but WSHC is not registered with the Georgia Secretary of State, does not possess a certificate of authority issued by the Georgia Secretary of State to transact business in the State of Georgia, and does not have a registered agent in the State of Georgia. WSHC may be served through Nate Ormond—WSHC's President, Chief Operating Officer ("COO"), Colorado registered agent, and upon information and belief owner—at 333 Perry Street, Suite 302, Castle Rock, Colorado 80104.

3.

Defendant Ormond is the President and COO of Defendant WSHC, and upon information and belief he is also the owner or an owner of WSHC. Ormond is subject to personal jurisdiction in this judicial district and division, and he may be served at his place of employment, 333 Perry Street, Suite 302, Castle Rock, Colorado 80104.

4.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

5.

Venue is appropriate in this judicial district and division pursuant to 28

U.S.C. § 1391(b).

### *Facts Relevant to Ms. Scott's Claims*

6.

Defendant WSHC is a medical lien provider that pays for the provision of

medical treatment to uninsured and underinsured individuals who have been

injured due to the tortious acts of another person (e.g., in an automobile

collision).

7.

Beginning in October 2017, Ms. Scott was employed by WSHC as a market

manager responsible for, among other things, developing business and brand

awareness within the Atlanta market, earning a base salary of approximately

$65,000 per year, plus bonuses (discretionary and non-discretionary), which were

paid monthly.

8.

Throughout her employment with WSHC, Plaintiff was subjected to disparate and unfavorable terms and conditions of employment because of her race (African-American) and because she complained about racial discrimination.

9.

In approximately March 2018, case manager Kevin Green stated to Plaintiff that "you people are always difficult to work with." This statement was overheard by other WSHC employees, including Denise Rasmussen, Plaintiff's supervisor.

10.

Plaintiff reasonably interpreted Green's comment about "you people" as a derogatory comment about Plaintiff's race and about Green's apparent belief that it was difficult to work with African-American employees.

11.

On the same day or the day after the phone call on which Green made his "you people" comment, Plaintiff complained to Rasmussen about his discriminatory remarks, told Rasmussen that she believed them to be racially

motivated, and asked that WSHC take steps to address Green's behavior and
communications toward Plaintiff.

12.

Green was subsequently terminated after he refused to apologize for the
comment. However, WSHC and Defendant Ormond blamed and unfairly
penalized Plaintiff for his termination, telling her, for example, that she needed
to learn how to sell herself to other WSHC employees to overcome the "stigma"
following Green's termination. Green's cases were assigned to Plaintiff, who was
not trained to handle the case load of a case manager and was still a relatively
new employee of WSHC, but Plaintiff was told to "suck it up."

13.

In approximately April 2018, after Plaintiff was berated by Defendant Nate
Ormond on a teleconference with numerous WSHC employees, Plaintiff told
Denise Rasmussen (Plaintiff's supervisor who had overheard Green's comment
to Plaintiff and to whom Plaintiff had complained about Green's racist remarks)
that she felt like she was being targeted because of her complaints about Green.
Rasmussen, not wanting to deal with Plaintiff's complaints of discrimination, set
up a new reporting structure whereby Plaintiff was supposed to go through an

intermediary, Sarah Hoff (Green's replacement), before bringing complaints to Rasmussen.

14.

In a meeting held on or about April 24 or 25, 2018, Hoff was rude and disrespectful to Plaintiff in the presence of witnesses including Rasmussen. Plaintiff complained that she felt this was continued retaliation because she complained about Green's racially-derogatory comments, and that she felt like she was being retaliated against for speaking out about racial discrimination. Plaintiff requested that WSHC conduct a race and cultural sensitivity training for its employees.

15.

Plaintiff was asked to put her concerns into writing, and she did so via an e-mail sent to Rasmussen and other WSHC employees (including its Director of Operations, Heather Casey) on April 27, 2018. Plaintiff complained about Hoff's "unprofessional," "malicious and demeaning," and "belittling" behavior toward her; another manager's (Nikki Velonis) failure to intervene when disparaging comments of a personal nature were directed toward her in the presence of numerous other employees; the fact that Plaintiff had "brought attention to instances in which a dehumanizing tone has been used to address [Plaintiff] in

the past, with no action"; "dishonest and manipulative behavior" by Hoff that "intentionally vilified and humiliated" Plaintiff; Plaintiff's concerns that she was being made "a target for unprofessional hostile comments and malicious behavior"; her "concern that feedback voiced by Sarah Hoff was personal in nature, and did not appear to be rooted in specific examples but more of a generalization that may be culturally based"; and that "the lack of response by management . . . made [Plaintiff] feel that [she] had to be mindful to show feelings of excessive patience and pleasantness even while peers expressed anger and made disparaging comments." A true and correct copy of Plaintiff's April 27, 2018 e-mail is attached as Exhibit 1.

16.

WSHC's Director of Operations Heather Casey replied to Plaintiff's e-mail on April 27, 2018, stating that because Plaintiff's "feedback appears to allege more than common workplace disagreements," she had "escalated to Nate [Ormond] for further direction." A true and correct copy of Casey's April 27, 2018 e-mail is attached as Exhibit 2 (*see* page 1, second response from top).

17.

Ormond also replied to Plaintiff on April 27, 2018, stating: "On review of this email, I would like to investigate the comments and concerns further." *See* Exhibit 2, page 1, top response.

18.

On or about April 30, 2018, Plaintiff and Kaywanda Smoot, another African-American WSHC employee, were reassigned to report directly to Defendant Ormond's wife, Ann Ormond. Up until that time, Ann Ormond had not had any active or official role as part of the company, and Plaintiff and Smoot were at that time the only two individuals in the company who reported to her.

19.

On or about May 4, 2018, Ann Ormond (Defendant Ormond's wife, who by that point had been made Plaintiff's supervisor), sent an e-mail to Plaintiff and another African-American WSHC employee named Kaywanda Smoot that purported to summarize a discussion that had occurred among the three the day before. Plaintiff provided feedback to Ann Ormond's e-mail, including via an e-mail dated May 5, 2018 in which Plaintiff noted that Ann Ormond's summary "doesn't specifically note Kay's or my comments on environment or my suggestion for cultural training for the team. I don't know if they need to be

listed specifically but just wanted to throw in a reminder in hopes that the training might get suggested in the next manager meeting." A true and correct copy of Plaintiff's May 5, 2018 e-mail is attached as Exhibit 3.

20.

On or about May 11, 2018, Plaintiff was verbally disciplined for supposed performance problems that she disagreed with. She responded that she felt she was being targeted, and she again asked for WSHC to give cultural sensitivity training. When Defendant Ormond stated that the idea of cultural sensitivity training was off the table, Plaintiff suggested that she might seek guidance from the EEOC. In response, Nate Ormond yelled at Plaintiff, telling her that she was very well compensated at WSHC but that if she wanted to go to the EEOC, "be my guest!" Plaintiff interpreted that, and upon information and belief Nate Ormond intended that, to be a threat that her employment would be terminated if she went to the EEOC.

21.

Kaywanda Smoot resigned her employment with WSHC on or about May 15, 2018. Upon information and belief, Smoot, who is also African-American, complained to Defendant Ormond and/or others at WSHC that racial discrimination was a problem at WSHC.

22.

On or about May 23, 2018, Plaintiff was interviewed for several hours by an attorney brought in by WSHC to investigate her complaints of discrimination and retaliation. On or about June 28, 2018, Ann Ormond told Plaintiff that the investigation was complete, that her concerns had been deemed unfounded, but that she should not worry because WSHC would not retaliate. Again, Plaintiff interpreted this, and upon information and belief Ann Ormond intended that statement to be, a threat to Plaintiff's continued employment with WSHC.

23.

On July 9, 2018, Defendant Ormond sent an e-mail to Plaintiff about her performance in the month of June, stating that "overall June was a fantastic month!," thanking Plaintiff for her efforts, and informing Plaintiff that her June bonus would be paid on July 13. A true and correct copy of Ormond's July 9, 2018 e-mail is attached as Exhibit 4.

24.

On July 10, 2018, Plaintiff was written up for supposedly undermining her team members. Again, Plaintiff disagreed with the basis for the discipline.

25.

Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 11, 2018, alleging that she had been subjected to race-based discrimination as well as retaliation. A copy of Plaintiff's Original Charge, bearing Charge No. 541-2018-02490, is attached as Exhibit 5.

26.

Plaintiff e-mailed Nate Ormond on July 12, 2018 and stated that she had filed an EEOC Charge.

27.

On or about July 12, 2018, WSHC posted Plaintiff's job as an open position online.

28.

On July 20, 2018, just eight days after Plaintiff informed him that she had filed an EEOC Charge against his company, Nate Ormond terminated Plaintiff's employment with WSHC.

29.

Plaintiff applied for unemployment insurance benefits following her termination from WSHC. As a further act of retaliation against Plaintiff, WSHC fought her attempt to collect unemployment. After a lengthy telephonic hearing

before an administrative hearing officer, Plaintiff was determined to be eligible

for unemployment benefits because the evidence adduced at the hearing did not

show by a preponderance of the evidence that she was disqualified for having

violated any workplace rule or policy.

30.

From approximately 2009 until at least July 11, 2019, Nate Ormond had a

publicly accessible Twitter account, where he used the handle @nateormond. His

profile contained his photograph and a bio that read: "Straight, white male

working his ass off in a lazy, liberal world. Try to keep up." (Figure 1, below.) In

one tweet, after former President Barack Obama stated "If I had a son, he'd look

like Trayvon [Martin]" after the fatal shooting of the unarmed African-American

teen, Ormond tweeted: "Apparently, even to blacks all black people look alike."

(Figure 2, below.) In another tweet, he referred to Obama as "the first Halfrican-

American president," remarking that "Herman Cain will be the first African-

American president." (Figure 3.) He also tweeted that he was "[t]ransitioning

from white to well-done at the pool" (Figure 4); complained that social media

favored the "Black Lives Matter" hashtag over the "All Lives Matter" and "Blue

Lives Matter" hashtags (Figure 5); referred to politicians in DC, during the

Obama administration, as "chimps," later blaming it on an autocorrect error that

he predicted would cause him to be "accused of racism" (Figure 6); tweeted about politicians playing "the 'race card'" (Figure 7); and mocked Target's announcement that  customers could use whichever bathroom matched their gender identity, commenting "Feeling particularly feminine today. Guess I'll use the woman's bathroom at Target. #tyrannyoftheminority." (Figure 8) Figures 1 through 8 are true and accurate depictions of the above-referenced Twitter profile and tweets.



*Figure 1*

 **Nate Ormond** @nateor...  · Mar 24, 2012  ∨

Apparently, even to blacks all black people look alike...Obama: cbsnews.com/8301-503544_16... via @CBSNews



Obama: "If I had a son, he'd look like Trayvon"
cbsnews.com

♡       ⇄ 1       ♡ 1       ⬆

*Figure 2*

 **Nate Ormond** @nateor...  · Oct 12, 2011  ∨

Barack Obama is the first Halfrican-American president. Herman Cain will be the first African-American president.

♡       ⇄       ♡       ⬆

*Figure 3*



**Nate Ormond** @nateor...  · Aug 17, 2013  ⌄
Transitioning from white to well-done at the pool.

*Figure 4*

**Nate Ormond** @nateor...  · Jul 28, 2016  ⌄
But type in "#Fr" and FreddyGray, "#Bl" and BlackLives..., "#Al" and AllLivesDidnt...could #TwitterCensorship be more blatant?!

**Nate Ormond** @nateor...  · Jul 28, 2016  ⌄
Never get conservative or libertarian suggestions with a "#". #FreeMilo, #AllLivesMatter, #BlueLivesMatter not auto suggested....

*Figure 5*



*Figure 6*

*Figure 7*



*Figure 8*

31.

Sometime after the "race card" tweet (Figure 7 above) was shared on July 11, 2019 and before September 15, 2019, Defendant Ormond's Twitter account was deleted. Figure 9, below, is a true and accurate depiction of the Twitter website on September 15, 2019 when undersigned counsel attempted to access the @nateormond Twitter profile.



*Figure 9*

***Exhaustion of Administrative Remedies***
***Applicable to Title VII Claims***

32.

Plaintiff incorporates the preceding paragraphs as if fully restated herein.

33.

Plaintiff filed her initial EEOC Charge on July 11, 2018. Exhibit 5.

34.

Plaintiff amended her EEOC Charge on July 23, 2018 to include her July 20 termination as an additional act of discrimination and retaliation. A copy of Plaintiff's Amended Charge is attached as Exhibit 6.

35.

On December 27, 2018, Plaintiff filed a Second Amended Charge with the EEOC, alleging that WSHC had again retaliated against Plaintiff, post-termination, by baselessly disputing her entitlement to unemployment insurance benefits. A copy of Plaintiff's Second Amended Charge is attached as Exhibit 7.

36.

On June 26, 2019, Plaintiff, through undersigned counsel, received a "Dismissal and Notice of Rights" from the EEOC (the "Right to Sue" or simply "RTS" letter). Although the RTS letter was dated June 7, 2019, the envelope it was mailed in bears a Pitney Bowes postal meter stamp dated June 20, 2019. A copy of the RTS letter and the envelope it was mailed in are attached as Exhibit 8.

37.

This lawsuit is filed within ninety days of Plaintiff's June 26, 2019 receipt of the Right to Sue letter.

38.

All administrative prerequisites to suit have been exhausted by Plaintiff.

### Count I: Racial Discrimination In Violation of Title VII
### WSHC Only

39.

Plaintiff incorporates the preceding paragraphs as if fully restated herein.

40.

The conduct of Defendant WSHC and its employees described in this Complaint, including its disparate treatment of Plaintiff during her employment as well as the decisions to discipline and then terminate Plaintiff, constitutes discrimination in the terms and conditions of Plaintiff's employment based on Plaintiff's race (African-American) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

41.

WSHC's stated reasons for disciplining and then terminating Plaintiff's employment were and are pretextual and intended to conceal and distract from WSHC's true, discriminatory motives.

42.

WSHC's discriminatory actions, including the termination of Plaintiff's employment, have caused Plaintiff to suffer lost compensation and other benefits of employment, lost future earnings and earning capacity, emotional distress, humiliation, mental anguish, attorneys' fees and related expenses, and other economic and non-economic harms which Plaintiff is legally entitled to recover.

43.

WSHC acted in bad faith, willfully, wantonly, and with reckless disregard for Plaintiff's federally protected right to be free from racial discrimination in employment, thereby entitling Plaintiff to an award of punitive damages.

### Count II: Racial Discrimination In Violation of 42 U.S.C. § 1981
### WSHC and Nate Ormond

44.

Plaintiff incorporates paragraphs 1 through 38 as if fully restated herein.

45.

The conduct of Defendants described in this Complaint, including their disparate treatment of Plaintiff during her employment as well as the decisions to discipline and then terminate Plaintiff, interfered with Plaintiff's ability to contract and materially and adversely affected the terms and conditions of Plaintiff's employment because of her race (African-American), in violation of 42 U.S.C. § 1981.

46.

Defendants' stated reasons for disciplining and then terminating Plaintiff's employment were and are pretextual and intended to conceal and distract from their true, discriminatory motives.

47.

Defendants' discriminatory actions, including the termination of Plaintiff's employment, have caused Plaintiff to suffer lost compensation and other benefits of employment, lost future earnings and earning capacity, emotional distress, humiliation, mental anguish, attorneys' fees and related expenses, and other economic and non-economic harms which Plaintiff is legally entitled to recover.

48.

Defendants acted in bad faith, willfully, wantonly, and with reckless disregard for Plaintiff's federally protected right to be free from racial discrimination in employment, thereby entitling Plaintiff to an award of punitive damages.

### Count III: Retaliation in Violation of Title VII
### WSHC Only

49.

Plaintiff incorporates paragraphs 1 through 38 as if fully restated herein.

50.

The conduct of Defendant WSHC and its employees described in this Complaint, including its disparate treatment of Plaintiff during her employment as well as the decisions to discipline and then terminate Plaintiff, constitutes unlawful retaliation against Plaintiff for having engaged in protected activity, in violation of Title VII.

51.

Plaintiff engaged in protected activity on at least the following dates and by engaging in at least the following actions: (A) complaining about Kevin Green's racially discriminatory comment about "you people," in approximately

March 2018; (B) complaining to Denise Rasmussen that Plaintiff felt she was being targeted because of her complaints about Green, in approximately April 2018; (C) complaining to Rasmussen, Casey, and other WSHC employees that she felt she was being retaliated against for speaking out against racial discrimination and requesting that WSHC provide cultural sensitivity training to its employees, on approximately April 24–27, 2018; (D) complaining to Ann Ormond about the racially insensitive work environment at WSHC and again requesting cultural sensitivity training be provided, on approximately May 3–5, 2018; (E) reiterating her request for cultural sensitivity training to Nate Ormond and suggesting that she would go to the EEOC, on approximately May 11, 2018; (F) participating in an interview as part of WSHC's investigation into Plaintiff's complaints, on or about May 23, 2018; (G) filing an EEOC Charge on July 11, 2018 and notifying Nate Ormond of that fact on July 12, 2018; and (H) subsequently amending her EEOC Charge to allege additional acts of retaliation.

52.

Each of Plaintiff's complaints about racially discriminatory and retaliatory treatment was a reasonable and good faith complaint, and her participation in the May 2018 internal investigation was likewise done in good faith.

53.

WSHC retaliated against Plaintiff after and because she engaged in protected activity by making her report directly to the wife of Nate Ormond, by subjecting her to different work requirements and expectations and treating her less favorably than her peers who had not engaged in protected activity, by imposing baseless discipline against her, by terminating her employment, and by (unsuccessfully) fighting her application for unemployment benefits, among other unlawful and retaliatory actions.

54.

WSHC's retaliatory actions, including the termination of Plaintiff's employment, have caused Plaintiff to suffer lost compensation and other benefits of employment, lost future earnings and earning capacity, emotional distress, humiliation, mental anguish, attorneys' fees and related expenses, and other economic and non-economic harms which Plaintiff is legally entitled to recover.

55.

WSHC acted in bad faith, willfully, wantonly, and with reckless disregard for Plaintiff's federally protected right to be free from racial discrimination in employment, thereby entitling Plaintiff to an award of punitive damages.

### Count IV: Retaliation in Violation of 42 U.S.C. § 1981
### WSHC and Nate Ormond

56.

Plaintiff incorporates paragraphs 1 through 38 as if fully restated herein.

57.

The conduct of WSHC and Nate Ormond described in this Complaint, including their disparate treatment of Plaintiff during her employment as well as the decisions to discipline and then terminate Plaintiff, constitutes unlawful retaliation against Plaintiff for having engaged in protected activity, in violation of § 1981.

58.

Plaintiff engaged in protected activity on at least the following dates and by engaging in at least the following actions: (A) complaining about Kevin Green's racially discriminatory comment about "you people," in approximately March 2018; (B) complaining to Denise Rasmussen that Plaintiff felt she was being targeted because of her complaints about Green, in approximately April 2018; (C) complaining to Rasmussen, Casey, and other WSHC employees that she felt she was being retaliated against for speaking out against racial discrimination and requesting that WSHC provide cultural sensitivity training to

its employees, on approximately April 24–27, 2018; (D) complaining to Ann
Ormond about the racially insensitive work environment at WSHC and again
requesting cultural sensitivity training be provided, on approximately May 3–5,
2018; (E) reiterating her request for cultural sensitivity training to Nate Ormond
and suggesting that she would go to the EEOC, on approximately May 11, 2018;
(F) participating in an interview as part of WSHC's investigation into Plaintiff's
complaints, on or about May 23, 2018; (G) filing an EEOC Charge on July 11, 2018
and notifying Nate Ormond of that fact on July 12, 2018; and (H) subsequently
amending her EEOC Charge to allege additional acts of retaliation.

59.

Each of Plaintiff's complaints about racially discriminatory and retaliatory
treatment was a reasonable and good faith complaint, and her participation in
the May 2018 internal investigation was likewise done in good faith.

60.

WSHC retaliated against Plaintiff after and because of her protected
activity by making her report directly to the wife of Nate Ormond, by subjecting
her to different work requirements and expectations and treating her less
favorably than her peers who had not engaged in protected activity, by imposing
baseless discipline against her, by terminating her employment, and by

(unsuccessfully) fighting her application for unemployment benefits, among other unlawful and retaliatory actions.

61.

WSHC's retaliatory actions, including the termination of Plaintiff's employment, have caused Plaintiff to suffer lost compensation and other benefits of employment, lost future earnings and earning capacity, emotional distress, humiliation, mental anguish, attorneys' fees and related expenses, and other economic and non-economic harms which Plaintiff is legally entitled to recover.

62.

WSHC acted in bad faith, willfully, wantonly, and with reckless disregard for Plaintiff's federally protected right to be free from racial discrimination in employment, thereby entitling Plaintiff to an award of punitive damages.

### *Demand for Jury Trial*

Pursuant to the Seventh Amendment of the United States Constitution, Rule 38(b) of the Federal Rules of Civil Procedure, and all other applicable laws, rules, and provisions, Plaintiff respectfully demands a trial by jury on all issues so triable.

### *Prayer for Relief*

WHEREFORE, Plaintiff respectfully asks this Court to:

1.      Accept this case for filing and take all necessary actions to secure the just, speedy, and inexpensive determination of this case as provided for in Rule 1 of the Federal Rules of Civil Procedure;

2.      Find, order, and declare that Defendants violated Plaintiff's federally-protected rights as alleged herein;

3.      Impose appropriate evidentiary and other sanctions against Defendant Ormond for the intentional spoliation of evidence (i.e., the deletion of his Twitter account after issuance of the Right to Sue letter in this case);

4.      Award Plaintiff all relief (legal, equitable, or otherwise) to which she is entitled under the law and the facts, including compensatory damages for Plaintiff's economic and non-economic losses, punitive damages at the maximum rate allowed by law to punish Defendants and deter similar conduct in the future, back-pay, front-pay in lieu of reinstatement (reinstatement being neither feasible nor realistic under the circumstances of this case), pre- and post-judgment interest at the maximum rates allowable by law, attorney's fees and costs of litigation, and any and all other relief deemed necessary, proper, or just; and

5.      Grant a trial by jury on all issues so triable.

Respectfully submitted this 18th day of September 2019.[1]

_____
Jennifer K. Coalson
Georgia Bar No. 266989
jcoalson@pcwlawfirm.com
Dustin L. Crawford
Georgia Bar No. 758916
dcrawford@pcwlawfirm.com

PARKS, CHESIN & WALBERT, P.C.
75 Fourteenth St., Suite 2600
Atlanta, Georgia 30309
(404) 873–8000 (Phone)
(404) 873–8050 (Fax)

*Counsel for Plaintiff Deidre Scott*

---

[1] Pursuant to Local Rule 7.1(D), undersigned counsel certifies that this filing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).